UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA      )
                                            )     No. 2:09-CR-46
V.                                            )     District Judge Greer
                                            )     Magistrate Judge Inman
JEFFREY STOCK                      )


## REPORT AND RECOMMENDATION

Defendant has filed a motion to dismiss the indictment filed against him. (Doc. 19). That motion has been referred to the United States Magistrate Judge for a report and recommendation under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). A hearing was held on July 23, 2009.

The indictment alleges that defendant was convicted in Indiana in November 1998 of two counts of sexual battery, Class D felonies, and thereafter traveled in interstate commerce (from Indiana to Tennessee) without complying with either Indiana's or Tennessee's sex offender registration laws, or the requirements of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901, *et seq.*, thereby triggering a violation of 18 U.S.C. § 2250(a).

The following facts are pertinent to the defendant's motion to dismiss:

In November 1998, defendant was convicted in Indiana of two counts of sexual battery. In May 2006, he registered in Indiana as required by Indiana's Sex Offender Registration Law; he did so again in May 2008. In May 2008, defendant was arrested by the

Indianapolis police for a drug charge; he remained in custody until September 1, 2008.

On October 9, 2008, defendant was arrested by the Knox County, Tennessee Sheriff's Department for traffic and drug offenses; he provided a Del Rio, Tennessee address and phone number to the Knox County, Tennessee authorities. He was released from custody by the Knox County authorities on October 17, 2008.

On November 1, 2008, then again on November 13, 2008, then on March 25, 2009, and then on April 6, 2009, defendant was arrested by the Cocke County, Tennessee authorities for various offenses. In April, and then again in May 2009 defendant was arrested by the Cocke County Sheriff's Department for violation of Tennessee's Sex Offender Registration Law.

Section 11-8-8-11 of the Indiana Code requires a sex offender to notify the appropriate Indiana authorities of any change in his principal residence address. Section 40-39-203(c) of the Tennessee Code requires a sex offender who has moved into Tennessee to notify state authorities within forty-eight hours of establishing a primary or secondary residence in this state. Thus, the relevant time period as far as this prosecution is concerned is between September 1, 2008, when defendant was released from custody in Indiana, and October 9, 2008, when defendant was arrested and taken into custody by the Knox County, Tennessee authorities. Defendant was required to comply with Indiana's registration and notification law within seventy-two hours of leaving Indiana, and with Tennessee's registration requirements within forty-eight hours of his arrival here.

SORNA, of course, is a federal law that requires the states to create and maintain a

2

Sex Offender Registry, and which requires sex offenders to register in the appropriate jurisdiction. It was enacted and became effective in July 2006. It was codified at 18 U.S.C. § 2250, and 42 U.S.C. §§ 16901, *et seq.*

Section 16911 of Title 42 of the United States Code categorizes sex offenders as Tier I, II, or III Offenders according to the nature of the sex crime of which they were convicted. It also defines various terms, including "Sex Offender Registry" and "Jurisdiction." The latter term is defined to mean any state or territory of the United States, as well as the District of Columbia.

Section 16912 of Title 42 requires each jurisdiction to maintain a Sex Offender Registry. This section directs the Attorney General to issue guidelines and regulations "to interpret and implement this subchapter."

Section 16913 directs a sex offender to register in each jurisdiction where he resides, employed, and where a student (if applicable), and to keep those registrations current. He is to make his initial registration before completion of any sentence of imprisonment imposed as a result of a conviction that gives rise to the registration requirement, or within three days of imposition of any sentence other than imprisonment. Subsection (d) provides that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the initial registration requirements] of this section."

Section 16914 lists the information to be maintained in each state's Sex Offender

Registry, some of which must be supplied by the offender, and some of which must be provided by the jurisdiction.

Section 16915 establishes the length of time a registration must be maintained. That time is based upon the categorization of the sex offender as established in Section 16911.

Section 16916 requires a sex offender to periodically verify the information about him maintained by the Registry. The verification is required annually if the offender is classified as a Tier I sex offender under § 16911, or every six months if a Tier II offender, or every three months if a Tier III offender.

Section 16917 requires an appropriate official in the jurisdiction where the offender is convicted to notify him of the registration requirements of SORNA. It also requires the offender to sign a form acknowledging that those requirements have been explained to him and that he understands them. Additionally, the jurisdiction must "ensure that the sex offender is registered."

Section 16918 requires each jurisdiction to provide internet access to its Sex Offender Registry.

Section 16919 directs the Attorney General to maintain a national data base at the Federal Bureau of Investigation for each sex offender.

Section 16922 requires any "appropriate official" to notify the Attorney General and appropriate law enforcement agencies of the failure of any sex offender to comply with the registration requirements.

Section 16923 directs the Attorney General to develop and support software to enable

4

the various jurisdictions "to establish and operate uniform sex offender registries and Internet sites."

Section 16924 directs each jurisdiction to implement the provisions of SORNA on or before July 27, 2009, or one year after the software described in § 16923 becomes available, whichever is later. If a jurisdiction fails to "substantially implement" the provisions of SORNA within this time frame, the jurisdiction shall not receive ten percent of federal funds[1] it otherwise would receive for that fiscal year.

Lastly, Section 2250 of Title 18 of the United State Code makes it a *federal* crime for sex offender to fail to register in accordance with the registration requirements; specifically, if a sex offender travels in interstate commerce and knowingly fails to register or update a registration as required by SORNA, he faces up to ten years of imprisonment.

On February 28, 2007, pursuant to 42 U.S.C. § 16912 and 16913, the Attorney General of the United States promulgated an interim rule "to specify that the requirements of [SORNA] apply to sex offenders convicted . . . before the enactment of [SORNA]."[2] On May 30, 2007, again pursuant to 42 U.S.C. § 16912, the Attorney General issued guidelines - the "SMART"[3] guidelines - to interpret and implement SORNA.[4] In those guidelines, the Attorney General cited that the purpose of the guidelines is to "provide guidance and

---

[1] Grant funds under 40 U.S.C. § 3750, *et seq*.

[2] 28 C.F.R. § 72.1-3.

[3] For "Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking."

[4] 72 F.R. 30210, 2007 WL 1540140 (F.R.).

5

assistance to the states and other jurisdictions in incorporating the SORNA requirements into their Sex Offender Registration and Notification Programs," noting that at that time registration and notification programs exist in all fifty states, the District of Columbia, and some territories and Indian tribes. This document also noted that SORNA constitutes a set of minimum national standards and "sets a floor, not a ceiling, for jurisdictions' programs."[5] *That document also made it clear that the requirements of SORNA applies to sex offenders whose convictions occurred before a jurisdiction's implementation of conforming registration requirements.*[6]

Defendant presents ten theories in support of his argument that SORNA is unconstitutional or inapplicable to him.:

1. The indictment fails to invoke this Court's jurisdiction or detail an offense committed by him;

2. The indictment violates the Due Process Clauses of the 5th and 14th Amendments to the U.S. Constitution;

3. SORNA does not apply to him;

4. SORNA is an Ex Post Facto law in violation of Article I, Section IX of the Constitution;

5. Defendant did not knowingly failed to register because the government failed to notify him of the obligations he may have had under SORNA;

---

[5]72 F.R. 30210, ¶ B.

[6]*Id.*, ¶ C.

6. SORNA is an effort by Congress to regulate non-economic intrastate activity in violation of Congress's authority under the Commerce Clause;

7. SORNA's registration requirements have no underlying "compelling governmental interest" and therefore constitute an unconstitutional restriction on defendant's right to travel;

8. SORNA represents an unconstitutional delegation by Congress of its legislative authority;

9. The Attorney General's interim rule was not properly promulgated; and

10. SORNA violates the Tenth Amendment to the Constitution.

In his brief, defendant combines several of his theories within a single argument, and sometimes presents the same theory in more than one argument. This report and recommendation will address defendant's arguments in the same format as he utilized in his supporting memorandum.

**I.** Defendant's first argument is that SORNA is inapplicable to him because Tennessee has not implemented the law, and punishing him for a law not yet applicable to him violates the *ex post facto* and due process clauses of the Constitution. It is his theory that although the Attorney General has promulgated a regulation[7] that makes SORNA's application retroactive to persons convicted before enactment of the act, he has not adopted a rule or regulation that makes the act retroactively applicable to persons convicted before

---

[7]27 C.F.R. § 72.3.

SORNA's *implementation* in Tennessee. And, so he argues, since SORNA has not yet been implemented in Tennessee, he cannot be *constitutionally* convicted under 18 U.S.C. § 2250 for failing to register as required by Tennessee's current law. He says that punishing him under this federal law would violate the *ex post facto* clause of the Constitution, and also would amount to a violation of the due process clauses of the Fifth and Fourteenth Amendments since it was impossible for him to register as required by SORNA in a state where SORNA had not been implemented.

It is beyond argument that the defendant knew of his obligation to register as a sex offender in the state of Indiana; after all, he did so for several years. Nor can he argue that he did not register in Tennessee because he was unaware of Tennessee's requirements any more than he could successfully argue that he cannot be convicted of drunk driving because he was unaware of Tennessee's DUI statutes; he is presumed to know the law. It is with the foregoing in mind that defendant's challenges to this indictment must be analyzed.

### *CONSTITUTIONAL QUESTIONS ASIDE, DOES SORNA APPLY TO DEFENDANT?*

Defendant's argument that SORNA by its very terms does not apply to him is not without some logic. Section 2250(a) of Title 18 of the United States Code makes it a federal criminal offense to travel in interstate commerce and knowingly fail to register or update a registration *as required by the Sex Offender Registration and Notification Act.*

Defendant undeniably violated Tennessee's sex offender registration laws, but he argues that he did not violate any registration requirements imposed by SORNA since Tennessee has not yet implemented those procedures. However, 42 U.S.C. § 16912 directs the Attorney General to issue guides and regulations "to interpret and implement" SORNA. The Attorney General did so in 28 C.F.R. § 72, in which it is explicitly provided that SORNA applies to sex offenders convicted of any predicate offense before enactment of SORNA. Further, 42 U.S.C. § 16913(d) grants authority to the Attorney General "to specify the applicability of [SORNA's] requirements . . . to sex offenders convicted before . . . its *implementation* in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the initial registration requirements]." [Italics supplied]. In May 2007, the Attorney General issued proposed Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines ostensibly to provide assistance to those states implementing SORNA. 72 Fed.Reg. at 30210. Defendant argues that one of these so called SMART guidelines "makes plain" that convicted sex offenders have a duty to register only after the jurisdiction implements SORNA:

> With respect to sex offenders with pre-SORNA [enactment] or pre-SORNA implementation convictions to remain in the . . . sex offender populations *at the time of implementation* . . . jurisdiction should endeavor to register them in conformity with SORNA quickly as possible . . . .

72 Fed. Reg. at 30228 (emphasis supplied by defendant).

Defendant suggests that this language shows that SORNA was not intended to be enforced until after the states had implemented the law's requirements. Respectfully, the

9

language cannot be stretched nearly that far. Moreover, in 71 Fed. Reg. 30210, also issued in May 2007, the Attorney General explicitly stated that the applicability of SORNA is not limited to sex offenders who committed the predicate sex crime after a jurisdiction's implementation of a conforming registration program; rather, SORNA's requirements are applicable to *all* sex offenders.[8]

Thus, in light of both the Attorney General's determination that SORNA applies to individuals such as defendant herein and the statutory authority underlying that determination, it now must be decided if SORNA's application to defendant is constitutional. As noted, defendant argues that applying SORNA to him is violative of both the *ex post facto* and due process clauses.

### *IS RETROACTIVELY APPLYING SORNA TO DEFENDANT CONSTITUTIONAL?*

Defendant asserts that if SORNA applies to him, it would constitute an *ex post facto* law as well as being a violation of due process under the Fifth and Fourteenth Amendments. As far as is known, every court of appeals which has addressed SORNA has upheld its constitutionality: *United States v. Samuels*, 2009 WL 877698 (6th Cir. 2009); *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009); *United States v. Diaz-Cardenas*, 2009 WL 1068236 (11th Cir. 2009); *United States v. Hacker*, 565 F.3d 522 (8th Cir. 2009); *United States v. Baccam*, 562 F.3d 1197 (8th Cir. 2009); *United States v. Powers*, 562 F.3d 1342 (11th Cir. 2009).

---

[8]72 Fed. Reg. 30210, ¶ C.

*Ex Post Facto Analysis*

For a sex offender to commit a violation of 18 U.S.C.§ 2250, three circumstances must be present: (1) defendant must be required to register in some jurisdiction, (2) knowingly fail to register or update a prior registration, and (3) *travel in interstate or foreign commerce.*

For a criminal or penal statute to be *ex post facto,* "two critical elements must be present . . . *:* it must be retrospective, that is, it must apply to the events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 21 (1981). "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987). However, "[a] statute does not violate *ex post facto* principles where it applies to a crime that 'began prior to, but continued after' the statute's effective date." *United States v. Brady*, 26 F.3d 282, 291 (2nd Cir. 1994).

Defendant was obligated to update his registration in Indiana every year, or within seventy-two hours of changing his principal residence address. If defendant relocated his principal residence from Indiana to Tennessee as alleged by the United States, he did so between September 1, 2008, and October 29, 2008, which would have been well after the enactment of the Attorney General's interim rule promulgated at 28 C.F.R. § 72.1-3. As discussed later in this report, a violation of SORNA is a continuing offense. Thus, defendant's failure to register as required by the laws of Indiana and Tennessee in 2008 generated a *2008* violation of SORNA, well after the promulgation of the Attorney General's

interim rule. As a result, as *United States v. Brady, supra*, holds, defendant's prosecution under SORNA does not run afoul of the *ex post facto* clause.

Additionally, the *ex post facto* clause applies only to criminal statutes;[9] if the statute is civil and regulatory, it cannot be violative of the *ex post facto* clause even when applied retrospectively. The United States Supreme Court has held that Alaska's sex offender registration law, applied retroactively to persons who committed their offenses prior to the law's enactment, is regulatory and therefore civil, notwithstanding that the law contains criminal sanctions for failure to register as required. *See, Smith v. Doe*, 538 U.S. 84 (2002). In *Smith*, the Supreme Court established a test to be applied in an *ex post facto* analysis:

> [The] court must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, [the court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Because [the court] ordinarily [should] defer to the legislature's state of intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

538 U.S. at 92.

Alaska's statute and SORNA are essentially identical. *See, e.g., United States v. Cardenas*, 2007 WL 4249513, Fn. 3 (S.D. FL 2007). The purpose of SORNA is regulatory, *viz*, to insure that the public has a means to acquire information regarding potential sexual predators that could pose a danger to their children. To be sure,

---

[9]*Webster v. Sowders*, 2998 WL 537537 (6th Cir. 1998).

12

SORNA provides for up to ten years incarceration, but that concerns *post*-enactment failure to register; it is not punishment for the original offense. *Cardenas, supra*, at *10; *United States v. Carr*, 207 WL 3256600 at *3 (N.D. Ind. 2007).

The vast majority of courts have rejected *ex post facto* challenges to SORNA on the same basis as above, i.e., that SORNA is regulatory and civil, not criminal. But even if SORNA is considered to be a punitive measure, it still withstands *ex post facto* challenge. In this regard, this magistrate judge agrees with the reasoning of District Judge DuBose in the Southern District of Alabama:

> In an apparent effort to establish federal jurisdiction over a sex offender that failed to register as required, Congress also provided as an element of the offense that the defendant "travels" in interstate commerce and then fails to register as required. 18 U.S.C.§ 2250(a)(2)(B). The act of traveling in interstate commerce and then failing to register as required became subject to prosecution no earlier than July 27, 2006, i.e., the effective date of 18 U.S.C.§ 2250. Accordingly, in order to avoid the prohibition of retroactive punishment the defendant must travel in interstate commerce and fail to register after 18 U.S.C.§ 2250 became effective.

*United States v. Kent*, 2007 WL 2746773 at *2 (S.D. Ala. 2007).

Here, defendant undeniably traveled in interstate commerce, not only after the enactment of SORNA in July 2006, but after the Attorney General's retroactive application of SORNA in February 28, 2007. The only question is *when* he did so, which is a matter for the jury to resolve.

Applying SORNA to defendant does not violate the *ex post facto* clause.

### Due Process Analysis

Defendant argues that inasmuch as Tennessee has not implemented

13

SORNA, it was impossible for him to register in compliance with SORNA, and that punishing him for failing to do something that it is impossible to do violates the due process clause's guarantee of fundamental fairness, citing *United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992).

The flaw in defendant's argument is that his premise is faulty; it was not impossible for him to comply with SORNA's registration requirements. He did so (in Indiana) in 2006 and then "involuntarily" in 2008. To be sure, the registration requirements in Tennessee do not meet all of SORNA's requirements. But defendant is not being prosecuted for providing less information than SORNA requires; he is being prosecuted for failing to register at all. "The fact that the states have not yet met their obligations under SORNA is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act. It was clearly possible for the Defendant to comply with SORNA, and as such, there is no due process violation." *United States v. Adkins*, 2007 WL 4335457 at *6 (N.D. Ind. 2007).

There was no due process violation.

**II**. Defendant next argues that he did not knowingly fail to register because the United States did not notify him of any obligations he may have had under SORNA. Defendant points out that 42 U.S.C. § 16917 requires the United States to affirmatively inform offenders of SORNA before any duty to register under the act arises. He notes that he was not in custody when SORNA was enacted and applied retroactively to offenders by rule of the Attorney General, as a result of which there was no mechanism by which he could

14

have learned of SORNA's requirements. Since he received no notice regarding SORNA, defendant insists that prosecuting him for failing to register violates his due process rights, and amounts to prosecution under an *ex post facto* law. He further argues that his knowledge of Indiana's registration requirements cannot substitute for notice under SORNA itself.

Plaintiff primarily relies upon *Lambert v. California*, 355 U.S. 225 (1958). In *Lambert*, a Los Angeles city ordinance required convicted felons to register with the city. Mr. Lambert failed to do so, and he was thereafter prosecuted. The Supreme Court held that he was being prosecuted for "passive" conduct, i.e., a "mere failure to register," as a result of which prior notice to him was an essential requirement:

> Notice is sometimes essential so that the citizen has the chance to defend charges. . . . Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. . . . [T]he the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

*Id.* at 228.

Defendant argues that his failure to register was "passive conduct," and that he had no notice that a federal statute required him to register, pointing out that Indiana never advised him of his obligations under SORNA, and neither did Tennessee when he moved here.

But defendant undeniably had knowledge of his requirement to annually update his registration in Indiana, and he must be presumed to have known of his obligation to register in Tennessee upon moving here, all of which satisfied the "notice" requirements implicit in the due process clause. In this regard, the reasoning of the district court of the Northern

15

District of Iowa, in a case with remarkably similar facts, is persuasive:

> Given [defendant's] previous registration in Michigan, and his knowledge that he was at least violating Michigan law when he failed to update his registration as required when he moved to Iowa, [defendant] cannot reasonably argue he was "unaware of any wrongdoing." As the Eighth Circuit Court of Appeals noted in *United States v. Hutzell*, 217 F.3d 966 (8th Cir. 2000), "The *Lambert* principle applies . . . only to prohibitions on activities that are not *per se* blameworthy." *Id.* at 968 (citations omitted).[Defendant's] failure to update his registration when he moved to Iowa was per se blameworthy, making *Lambert* inapplicable to him, and he cannot rely on *Lambert's* exception to the long-standing rule that "ignorance of the law is no excuse." *Id.*

*United States v. Howell*, 207 WL 3302547 (N.D. Iowa 2007).

> In the same vein, the district court for the Western District of Virginia stated:

> Defendant claims he was denied due process because he received no notification of SORNA's requirements. This amounts to a claim that ignorance of the law excuses non-compliance. Unsurprisingly, Defendant cites no authority for this proposition, which is at odds with centuries of Anglo-American jurisprudence. Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation. *See, e.g. United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir.2000) (knowledge that firearm ownership was prohibited not necessary to sustain conviction under 18 U.S.C. § 922(g)). Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.

*United States v. Roberts*, 2007 WL 2155750 at *2 (W.D. Va. 2007).

Defendant could have complied with SORNA merely by notifying Indiana and Tennessee of his relocation to Tennessee within the time prescribed by those states' respective sex registration laws. Defendant was charged with knowledge of his obligation to register under SORNA, and there is no due process violation.

**III.** Defendant next argues that this prosecution is a violation of the *ex post facto*

16

clause because the United States seeks to criminalize conduct that pre-dated SORNA. Defendant's argument goes something like this:

(1) as far as defendant's travel in interstate commerce is concerned, the indictment alleges only that he so traveled some time after November 23, 1998, the date he was convicted of sexual battery in Indiana;

(2) SORNA was not enacted until July 2006;

(3) any interstate travel between November 1998 and July 2006, i.e., "pre-SORNA travel," could not have been a violation of SORNA since SORNA did not then exist;

(4) if he traveled in interstate commerce during that pre-SORNA time, without complying with either Indiana's or Tennessee's registration laws, he was then in violation of those laws and subject to criminal sanctions imposed by either or both of those states;

(5) his offense was complete at that time, i.e., failing to register is not a "continuing offense," as a result of which a failure to register after SORNA's enactment in July 2006 or thereafter could not constitute a new and separate offense;

(6) since failing to register is not a continuing offense, and since his offense was complete some time between 1998 and July 2006, charging him criminally under SORNA for failing to comply with SORNA's requirements is a violation of the *ex post facto* clause.

Defendant relies upon a district court case from this circuit, *United States v. Smith*, 481 F.Supp.2d 846 (E.D.Mich. 2007). The *Smith* case agrees completely with defendant's argument, holding that (1) failing to register as a sex offender is *not* a continuing violation, *(id.*, at 852), and (2) SORNA is primarily criminal, not civil and regulatory, ( *id.*, at 853).

This magistrate judge disagrees with the district judge in *Smith* that a failure to register is not a continuing offense. Stated conversely, this magistrate judge firmly believes that failing to register *is* a continuing offense. SORNA requires a sex offender *to do something, viz.*, to register. The offense arises when the defendant fails to perform that affirmative act. If he fails to do so, his offense continues, and so it will until he registers. Contrary to the district court in *Smith, supra*, at least two circuit courts of appeals have concluded that failing to register constitutes a continuing offense: *United States v. Hinckley*, 550 F.3d 926 (10th Cir. 2008), and *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008).

If defendant's failure to register was a continuing offense, as this magistrate judge firmly believes it was, then defendant's basic premise collapses regarding this portion of his argument.

**IV**. Defendant argues that the enactment of SORNA exceeded Congress's authority under the Commerce Clause because SORNA is an effort to regulate intrastate activity that does not substantially affect interstate commerce. Defendant relies upon *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000).

*Lopez* was something of a sea change in Supreme Court jurisprudence as far as the Commerce Clause is concerned. From the time of Chief Justice John Marshall until the mid-20th Century, the cases under the Commerce Clause dealt with what the Commerce Clause prohibited, either to the states or the federal government. But then in the mid-20th Century, the emphasis shifted; the Supreme Court began to uphold various federal legislative enactments on the basis that even intrastate activities could be federally regulated if those

activities affected interstate commerce in some fashion. Since virtually anything and everything, especially in this day and time, can be said to affect interstate commerce at least to some degree, Congress enacted vast amounts of legislation under the Commerce Clause, which was consistently upheld by the Supreme Court.

And then *Lopez* was decided. *Lopez* involved a prosecution under 18 U.S.C. § 922(q)(1)(A) which made it a federal crime to possess a firearm in a school zone. The Court obviously was concerned that the Commerce Clause was becoming a master passkey used by Congress to open every conceivable legislative and regulatory lock. The Supreme Court struck down the statute, finding that it exceeded Congress's authority under the Commerce Clause. *Lopez* held that Congress may regulate three broad categories of activities under the Clause: (1) it may regulate the channels of interstate commerce; (2) it may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activity; and (3) it may regulate those activities having a "substantial relation" to interstate commerce. 514 U.S. at 558.

If § 922(q) was to be upheld, it would be under the third factor, the "substantial relationship" category. *Id.*, at 559. First, as a criminal statute dealing with possession of a firearm, § 922(q) had nothing to do with commerce in the ordinary meaning of that word; i.e., no commercial transaction was involved. *Id.,* at 561. Second, the statute had no language that limited the prohibited transaction to commerce in any way. Lacking such a "jurisdictional element," a court could not determine in any given case that the particular

circumstances of the defendant's possession of a gun somehow involved interstate commerce. *Id.*, at 561-2. Third, although the possession of a gun on school property could obliquely affect interstate commerce, as could practically any activity, the effect was far too attenuated to pass muster under the Commerce Clause. Fourth, the Supreme Court noted that "the question of congressional power under the Commerce Clause is 'necessarily one of degree.'" *Id.,* at 566. The Court held that possession of a gun on school property could have a theoretical impact upon interstate commerce, but that impact was *de minimis*, i.e., far too attenuated. As a result, § 922(q) was held to be unconstitutional.

The Supreme Court later decided *United States v. Morrison*, 529 U.S. 598 (2000), which concerned the Violence Against Women Act, 42 U.S.C. § 13981. This Act created a civil cause of action for anyone injured by the violent act of another, if that violent act was motivated by the victim's gender. As it did in *Lopez*, the Supreme Court declared that the Act exceeded Congress's power under the Commerce Clause. The Supreme Court indicated that, when considering whether an activity "substantially affects" interstate commerce (the third prong under *Lopez)*, a court should consider four factors: (1) Is the prohibited activity commercial or economic? (2) Is the statute's scope limited by an explicit jurisdictional element within it, i.e., a requirement that the proscribed activity somehow be involved with interstate commerce? (3) Did Congress make findings regarding the effect of the prohibited conduct on interstate commerce? And (4), is the link between the activity and interstate commerce truly substantial, or is it attenuated? 529 U.S. 610-612. Obviously, a violent assault was neither economic nor commercial behavior. *Id.,* at 613. Neither did the

statute have any jurisdictional element, such as interstate travel to commit the assault. *Id.*

Congress, however, did make findings regarding the impact of gender-motivated violence

upon interstate commerce, but the Court noted that a congressional finding of an impact on

interstate commerce did not necessarily mean that there was one; the final decision in that

regard resided with the Court. *Id.*, at 614. And, finally, the Court concluded that the impact

on interstate commerce of the prohibited activity, *viz*, gender-motivated assault, was

attenuated. *Id.*, at 615.

Therefore, *Lopez* and *Morrison*, when read together, suggest the following: (1)

Practically any intrastate activity can be said to affect interstate commerce. (2) There must

be some limit on the power of the federal government to regulate intrastate activity;

otherwise, Congress will supplant the state legislatures.[10] (3) Under the Commerce Clause,

Congress may validly regulate the use of the channels of commerce, and it may regulate the

instrumentalities of interstate commerce, or persons or things in interstate commerce, and it

may regulate those activities that have a *substantial economic or commercial relationship*

*to interstate commerce*. (4) And that "substantial relationship" must truly be substantial, i.e.,

if it is tenuous or attenuated, it is not sufficient under the Commerce Clause.

It is beyond any reasonable argument that sex crimes, especially those

perpetrated upon children, have a substantial economic relationship to interstate commerce.

There is nothing tenuous or attenuated about the relationship of sex crimes perpetrated

---

[10]*See, Morrison*, 529 U.S. 615: ". . . Congress might use the Commerce Clause to
completely obliterate the Constitution's distinction between national and local authority . . . ."

against children and interstate commerce. As just one example, the devastating psychological impact upon the victim can (and usually does) last a lifetime, and the economic fallout ripples across state lines almost immediately.

Also, unlike the Violence Against Women Act, SORNA has interstate travel as a jurisdictional element of the offense. That distinction is far more than cosmetic.

Virtually every defendant heretofore charged with a violation of SORNA has asserted a Commerce Clause challenge, and as far as can be ascertained, every court has rejected it, most recently the Eighth Circuit Court of Appeals, *U.S. v. Howell*, 552 F.3d 709 (8th Cir. 2009).

Section 2250 of Title 18 of the United States Code is a valid exercise of Congress' power under the Interstate Commerce Clause.

**V**. Pointing out that the Constitution implicitly protects a citizen's right to travel among and between the states,[11] defendant argues that SORNA violates that right of travel because there is no compelling government interest to support a restriction on that right.

The court disagrees with defendant's implicit premise, *viz.*, that SORNA restricts or impedes interstate travel. It does not; it only requires a sex offender to comply with the registration and notification laws of the states between or among which he travels. To the extent defendant suggests that the registration requirement is a "burden" on interstate travel, the Eleventh Circuit Court of Appeals has held to the contrary, *United States v. Ambert*, 561

---

[11]*Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618 (1969); *United States v. Guest*, 383 U.S. 745 (1966).

F.3d 1202 (11th Cir. 2009).

**VI.** Defendant argues that the provision in SORNA that delegates to the Attorney General the authority to specify the applicability of the Act to sex offenders convicted before July 27, 2006, is an unconstitutional delegation of legislative powers to the executive branch.

18 U.S.C.§ 16913(d) provides that the Attorney General "shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006, or its implementation in a particular jurisdiction . . . ." Defendant argues that Congress' delegation to the Attorney General of the authority to specify SORNA's applicability to offenders convicted before passage of the act and before SORNA's implementation is a violation of the nondelegation doctrine, *citing Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935): "Congress is manifestly not permitted to advocate or transfer to others the legislative functions with which it is vested." *Id.* , 421.

So far, every court who has considered this argument has rejected it. *See, e.g., United States v. Hinen*, 487 F.2d 747 (W.D. Va. 2007):

> Even if the statute is open to the interpretation that it gives the Attorney General the authority to determine the applicability of SORNA to all sex offenders with convictions predating its enactment, the canon of constitutional avoidance preponderates in favor of finding that Congress did not cede its core legislative functions to the executive branch by the language in subsection (d).

487 F.Supp.2d at 753.

*See also, United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009); *United States v. Cardenas*, 2007 WL 4245913 at *10 (N.D. Fla.); *United States v. Elliott*, 2007 WL 4365599 at *7 (S.D. Fla. 2007).

The reasoning of the above courts, and all others which have considered this question, is more than persuasive. There was no unconstitutional delegation of legislative authority by Congress to the Attorney General.

**VII.** Defendant next argues that the Attorney General's interim rule that retroactively applied SORNA to certain offenders violated the Administrative Procedures Act because it was promulgated without proper notice and comment.

It is the regulation reported at 28 C.F.R. § 72.3 that made SORNA retroactively applicable to defendant and others similarly situated. Defendant argues that this regulation was promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 533, inasmuch as the Attorney General failed to provide public notice and a period for comment.

Section 553 of Title 5 of the United States Code sets out the procedures that an agency must follow when it intends to adopt a rule. Basically, the agency must give public notice at least thirty days before the effective date of the proposed rule, and it must within that time solicit comment from the public. Subsection (b)(3) provides for an exception to the notice requirement:

> Except when notice or hearing is required by statute, this subsection does not apply -
>
> (A) * * *
>
> (B) When the agency for good cause finds (and incorporates the finding in brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

Within the body of the proposed rule the Attorney General recited:

The implementation of this rule as an interim rule, with provisions for post-promulgation comments, is based on a "good cause" exceptions found at 5 U.S.C. § 553(b)(3)(B) and (d)(3), for circumstances in which "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(3)(B).

The rule specifies that the requirements of the Sex Offender Registration and Notification Act apply to all sex offenders (as defined in that Act), including those convicted of the offense for which registration is required prior to the enactment of the Act. The applicability of the Act's requirements promotes the effective tracking of sex offenders following their release, by means described in sections 112-17 and 119 of the Act . . . .

The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements - and related means of enforcement, including criminal liability under 18 U.S.C.§ 2250 for sex offenders who knowingly fail to register as required - to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register . . . .

It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. § 533(b) or with the delayed effective date normally required under 5 U.S.C. § 533(d).

Unlike the other grounds raised by defendant in his motion to dismiss, very few courts have addressed this particular issue in the context of SORNA. One court which was confronted with the question held that "[t]he Attorney General demonstrated good cause for failing to comply with the strictures of the [Administrative Procedure Act], therefore, the [rule] was valid." *United States v. Gould*, 2007 WL 4371418 (D. Md. 2007).[12]

This court agrees with the decision of the *Gould* court; the Attorney General stated good cause for promulgating the rule without prior notice and without prior public comment

---

[12]The Seventh Circuit, in an off-handed manner, referred to this particular argument as "frivolous;" *U.S. v. Dixon* 551 F.3d 578, 583 (7th Cir. 2008).

25

**VIII.** Does SORNA violate the Tenth Amendment?

Citing *Printz v. United States*, 521 U.S. 898, 935 (1997), defendant correctly points out that the Tenth Amendment to the Constitution prohibits the federal government from commandeering state officials into enacting or administering federal law. He also correctly notes that Congress may persuade or entice the states to administer a federal regulatory scheme by extending a financial incentive to the states or, alternatively, by withholding federal funds. This latter approach, of course, is what Congress has done in SORNA. Stated colloquially, Congress has said, "Implement SORNA's registration requirements and procedures, or you will forfeit ten percent of certain funds."

Recognizing that it is not a violation of the Tenth Amendment for the federal government to use the granting or withholding of federal monies as an incentive to administer a federal regulation, defendant suggests that SORNA is forcing states to register sex offenders *now*, before they have had a chance to either accept or reject the federal government's offer by implementing (or not) SORNA's provisions. Defendant suggests that this is the type of commandeering that the Tenth Amendment prohibits.

Respectfully, the court again must disagree with defendant's premise, *viz*, that the federal government is forcing Indiana (or Tennessee) to register sex offenders before either of those states has decided to comply with SORNA's requirements. Indiana's registration requirements have not changed one iota, and neither has Tennessee's, after the enactment of SORNA. Defendant is being prosecuted because he traveled in interstate commerce and failed to comply with either Tennessee's or Indiana's re-registration requirements. Those

26

requirements are no different before the enactment of SORNA than they are now.

> The Sex Offender Registration and Notification Act . . . does not require states, or their officials, to do anything they do not already do under their own laws. Currently, all states have sex offender registries enacted under state law. The Sex Offender Registration and Notification Act only requires that sex offenders register in those pre-existing state registries. The defendant provides no support for his contention that the Federal Government under this Act requires state officials to perform any obligation not only required of them under state law.

*United States v. Pitts*, 2007 WL 3353423 at *9 (M.D. La. 2007).

### *CONCLUSION*

For the reasons discussed above, it is respectfully recommended that defendant's motion to dismiss the indictment (Doc. 19) be denied.[13]

Respectfully submitted,

_____s/ Dennis H. Inman_____
United States Magistrate Judge

---

[13]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).